FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 1 7 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALLSTATE INSURANCE CO., as
subrogee of Clarence & Ona
Westfall,

    Plaintiff,

v.

EVER ISLAND ELECTRIC CO. and
TAI SHI AN ELECTRIC CO.,

    Defendants.

CIVIL ACTION NO.
1:03-CV-3817-JEC

### O R D E R  &  O P I N I O N

This case is presently before the Court on defendants' Motion for Summary Judgment [56] and defendants' Motion to Compel [57]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [56] should be **DENIED** and defendants' Motion to Compel [57] should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This litigation arises from a fire that occurred at the home of Clarence and Ona Westfall in December of 1999. (Compl. [1] at ¶ 11.) At the time of the fire, plaintiff Allstate insured the Westfalls'

AO 72A
(Rev.8/82)

home. (*Id.* at ¶ 12.) Pursuant to their insurance policy, the Westfalls made a claim for fire-related damages in the amount of $659,899.27. (*Id.* at ¶ 13.) Plaintiff paid the claim, and thereby became the subrogee of all causes of action related to the fire. (*Id.* at ¶ 14.)

Immediately after the fire, plaintiff commenced an investigation to determine its cause. (Pl.'s Statement of Material Facts ("PSMF") [62] at ¶ 6.) To that end, plaintiff retained a certified fire investigator, William Dodd, to conduct an initial origin and cause investigation. (*Id.*) Dodd concluded that the fire originated at the connection between an extension cord and a timer adjacent to the Westfalls' Christmas tree. (*Id.* at ¶ 7.) After reviewing Dodd's report, plaintiff retained an electrical engineer, Tony Echols, to determine the precise cause of the fire. (*Id.* at ¶ 8.) Echols investigated the physical evidence recovered from the fire scene, and concluded that the fire resulted from a manufacturing defect in the plug of the extension cord. (*Id.* at ¶ 21.)

Following Echols' investigation, plaintiff filed this products liability action against defendant Tai Shi An, the alleged manufacturer of the plug.[1] (Compl. [1] at ¶ 11.) Defendant has filed

---

[1] Plaintiff also filed suit against defendant Ever Island. (Compl. [1] at ¶ 11.) Tai Shi An is a successor in interest to Ever Island. (Defs.' Mem. in Supp. of Summ. J. ("Defs.' Mem.") [56] at 2.) For purposes of the present motions, there is no distinction

a motion for summary judgment and a motion to compel, both of which are presently before the Court.

## DISCUSSION

I.  **Defendant's Motion for Summary Judgment**

   A.  **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. (*Id.* at 249-50.)

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the

---

between the defendants, and the Court will refer to them collectively as "defendant."

burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. (*Id.* at 322-23) (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. (*Id.* at 323.) However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." (*Id.* at 325.) After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" (*Id.* at 324.) While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

### B. Product Identification

Defendant contends that it is entitled to summary judgment because there is no evidence that Tai Shi An manufactured the extension cord that was involved in the Westfall fire. (Defs.' Mem. [56] at 5-7.) To recover on its product liability claims, plaintiff must establish proximate cause. *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1519 (11th Cir. 1988)(applying Georgia law).[2] *See also Hoffman v. AC&S, Inc.*, 248 Ga. App. 608, 610, 548 S.E. 2d 379, 382 (2001)("Under Georgia law . . . 'proximate cause' is a necessary element of a product liability case.") That requires, at a minimum, some evidence that defendant manufactured the product that caused the alleged harm. *See Chapman*, 861 F.2d at 1519 ("Plaintiffs must satisfy this proximate cause requirement by showing that their son's death was caused by exposure to [a product] manufactured or distributed by a particular Defendant") and *Hoffman*, 248 Ga. App. at 610, 548 S.E. 2d at 382 ("A manufacturer has the absolute right to have his . . . liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else."). The evidence may be circumstantial or direct. *Chapman*, 861 F.2d at 1519.

---

[2] This is a diversity action based on Georgia products liability law. (Compl. [1] at ¶¶ 1, 6-10.)

Plaintiff concedes that there is very little evidence that defendant manufactured the extension cord that was involved in the Westfall fire. (DSMF [56] at ¶ 15; Pl.'s Resp. to DSMF [62] at ¶ 15.) Most of the extension cord was destroyed in the fire, and Mr. Westfall testified that he could not remember where he had purchased the cord or who manufactured it. (DMSF [56] at ¶¶ 5-6.) Moreover, there is evidence that the cord contained a foot switch, and defendant did not manufacture any extension cords with foot switches during the relevant time period. (*Id.* at ¶¶ 16-17.)

However, plaintiff does not contend that the fire was caused by a defect in the entire extension cord, but by a defect in the plug. (*See* PSMF [62] at ¶ 19.) The distinction is important, because one of the prongs of the plug contains defendant's trademark. (*Id.* at ¶ 23; Chiang Aff. at ¶ 6.) Defendant's Chief Engineer, T.D. Chiang, testified that the trademark "means that [defendant] likely manufactured the plug component of the [e]xtension [c]ord." (Chiang Aff. at ¶ 7.)

Given that the alleged defect is in the plug of the extension cord, plaintiff's failure to identify the manufacturer of the entire cord is immaterial. Particularly in light of Chiang's testimony, the appearance of defendant's trademark on the plug is sufficient to support a reasonable inference that defendant manufactured the plug. Accordingly, defendant's motion for summary judgment on this ground

is **DENIED**.

### C. Evidence of a Defect

Defendant also contends that it is entitled to summary judgment because there is insufficient evidence that a plug defect caused the fire. (Defs.' Mem. [56] at 7-12.) Specifically, defendant argues that: (1) the evidence shows that the fire was likely caused by a timer, which defendant indisputably did not manufacture; and (2) the only evidence that the fire resulted from a plug defect, Tony Echols' expert opinion, is unreliable and should not be admitted. (Id.)

As to the first argument, the fire chief who responded to the scene of the fire apparently told Mrs. Westfall that the fire originated in a timer that was attached to the extension cord. (Defs.' Mem. [56] at 7.) Mr. Westfall also testified in his deposition that the timer malfunctioned on the day of the fire. (Id. at 8.) The fire chief's statement, and Mr. Westfall's testimony, suggest that the Westfall fire may have been caused by something other than a defective plug. That there is some evidence of an alternative cause of the fire, however, does not entitle defendant to summary judgment. Plaintiff's expert intends to testify, contrary to the statement of the fire chief, that in his opinion a plug defect caused the fire. (PSMF [56] at ¶ 21.) The conflict in the evidence must be resolved by the fact-finder at trial, as opposed to the Court

7

on summary judgment. *See Anderson,* 477 U.S. at 249-50.

With regard to Echols' opinion, Federal Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

FED.R.EVID. 702. Pursuant to Rule 702, expert testimony is admissible when: (1) the expert is qualified to testify competently; (2) the expert's methodology is reliable; and (3) the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue in the case. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1309 (11th Cir. 1999).

Defendant does not question Echols' qualifications.[3] (*See* Defs.' Resp. to Pl.'s Additional Statement of Facts [66] at ¶¶ 10-14.) Neither is there any doubt that Echols' testimony will "assist the trier of fact . . . to determine a fact in issue." *Allison,* 184 F.3d at 1309. Echols' opinion goes to the very heart of the case: the most likely cause of the fire that is the subject of the litigation.

---

[3] Echols is a licensed professional engineer in nine states. (PSMF [62] at ¶ 12.) He specializes in electrical fires and electrical accidents. (*Id.* at ¶ 10.) Since 1987, he has investigated between 1500 and 2000 electrical fires, and provided expert testimony in court approximately eight times. (*Id.* at ¶¶ 11, 14.)

8

Defendant contends, however, that Echols' opinion is not sufficiently reliable to meet the *Daubert* standard. (Defs.' Mem. [56] at 20-22.) The Court does not agree.

An expert's testimony is admissible under *Daubert* if, in addition to meeting the above requirements, it is "sufficiently reliable and trustworthy for the factfinder to consider." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). Echols' opinion, which applies basic engineering principles to the evidence in the record, meets this criteria. Prior to rendering his opinion, Echols inspected the fire scene, and reviewed the testimony of Mrs. Westfall, to gain an understanding of where and how the fire originated. (PSMF [62] at ¶¶ 15-16.) Echols then conducted a visual, microscopic, and x-ray examination of the physical evidence recovered from the scene, including the extension cord plug. (*Id.* at ¶¶ 17-18.) Based on the condition of the plug and other cord components, and his understanding of the origin of the fire, Echols determined that the heating most likely resulted from a loose fuse holder in the plug.[4] (*Id.*) He concluded, reasonably, that a

---

[4] Contrary to defendant's argument, the current condition of the fuse cap does not render Echols' testimony unreliable. (See Defs.' Mem. [56] at 9.) Echols acknowledged in his deposition that the fuse clip prongs are currently joined together, not spread apart. (*Id.*) However, he explained that the plug was likely "impacted on the end and mashed together" during the fire department overhaul. (Echols Dep. at 63.)

9

manufacturing defect in the plug caused the Westfall fire. (*Id.* at ¶ 21.)

Although defendant disagrees with Echols' conclusion, it does not raise any serious questions about his methodology, which appears to be sound. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153-54 (1999)(focusing on an expert's methodology, as opposed to his conclusions, in determining whether his opinion was admissible under Rule 702). Echols' opinion, in addition to Dodd's opinion and Mrs. Westfall's testimony, is sufficient to permit a reasonable inference that a defective plug caused the Westfall fire. Accordingly, defendant's motion for summary judgment is **DENIED**.

## II. Defendant's Motion to Compel

Defendant has filed a motion to compel plaintiff to: (1) respond to defendant's request to admit concerning alternative causes of the Westfall fire; and (2) produce an unredacted version of the adjuster's diary related to the investigation of the fire. (Defs.' Mot. to Compel [57].) The Court agrees that plaintiff failed to properly respond to defendant's request to admit. Accordingly, defendant's motion to compel is **GRANTED in part**. However, the Court finds that the redacted portions of the adjuster's diary are protected by the work product doctrine, and therefore **DENIES** defendant's motion with respect to the diary.

10

In June, 2006, defendant served plaintiff with Request to Admit Number 24, which asked plaintiff to admit that it had "knowledge that there exists more than one possible cause of the fire at issue in this case." (*Id.* at Ex. B.) Plaintiff responded only by stating that it could "neither admit or deny" because "[t]he request as written is vague and unclear." (*Id.*)

Defendant repeatedly attempted to elicit a more detailed response to its request, to no avail. In August and September of 2006, defendant sent plaintiff three letters noting that plaintiff's response was inadequate and requesting an amendment. (*Id.* at Exs. C-E.) Plaintiff did not respond to any of those letters. In November, 2006, defendant informed plaintiff that:

> We have been awaiting an adequate response, or any communication whatsoever, regarding [plaintiff's] responses to [defendants'] requests for admission. I brought this issue to your attention approximately four months ago, have sent you multiple letters and emails on the very same issue, and you have continued to ignore my requests.

(*Id.* at Ex. F.) Plaintiff still did not respond.

Federal Rule 36, which authorizes requests for admission, requires that a responding party "set forth in detail the reasons why . . . [it] cannot truthfully admit or deny [a] matter." FED.R.CIV.P. 36(a). Plaintiff's statement that defendants' request is "vague and unclear"--besides being inaccurate--does not meet this

11

requirement.[5]  Plaintiff's failure to appropriately respond to the request, and its refusal to even acknowledge defendant's repeated requests for a more detailed response, is inexcusable.  The Court thus **GRANTS** defendant's motion to compel with respect to Request to Admit Number 24.  Plaintiff should amend its response to the request **within ten (10) days** of this Order.  If it fails to do so, the Court will deem the request to be admitted.[6]  In addition, pursuant to Rule 37(a)(4), the Court **ORDERS** plaintiff to pay defendant's fees and costs associated with the portion of the motion that deals with request to admit number 24.

The remainder of defendant's motion to compel concerns the adjuster's diary.  (Defs.' Mot. to Compel [57] at 6-9.)  In Document Request Number 3, defendant asked plaintiff to produce "[t]he claims adjuster's working file related to the fire that is the subject of this lawsuit."  (*Id.* at 8.)  In response, plaintiff produced 249

---

[5] Defendant's request, which simply asks plaintiff to admit that it is aware of a possible alternative cause of the fire, is fairly straightforward.  If plaintiff believed that the request was overly broad or poorly worded, it should have responded with a partial or qualified admission or denial.  See FED. R. CIV. P. 36(a) (providing for a qualified or partial admission or denial "when good faith requires" it).

[6] Rule 36 authorizes the Court to either deem defendant's request to be admitted or require plaintiff to serve an amended response. FED. R. CIV. P. 36(a).  Because plaintiff did respond to the request, however inadequately, the Court will give plaintiff an opportunity to serve an amended response.

12

pages of the adjuster's claim diary. (Pl.'s Resp. to Defs.' Mot. to Compel [60] at 8.) Plaintiff partially redacted 19 pages of the diary that were created after plaintiff referred the claim to its subrogation counsel. (*Id.*) Plaintiff contends that the redacted portions of the diary were prepared in anticipation of litigation, and at the direction of counsel, and are thus protected from disclosure by the work product doctrine. (*Id.*)

The work product doctrine applies to documents and other items prepared by a party or its representative in "anticipation of litigation." FED. R. CIV. P. 26(b)(3). The doctrine protects such documents from disclosure unless the party seeking them "has substantial need of the materials [and] . . . is unable without undue hardship to obtain [them] by other means." (*Id.*) A party's representative includes its attorney, employee, or other agent "working on behalf of the party and preparing the document with the prospect of litigation in mind." *Shipes v. BIC Corp.*, 154 F.R.D. 301, 305 (M.D. Ga. 1994)(Owens, J.). *See also Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 133 (S.D. Ga. 1982)(Alaimo, J.)(noting that Rule 26(b)(3) extends discovery protection to the work product of a party or his agents and representatives as well as his attorney).

Whether a document was prepared "in anticipation of litigation" depends upon whether the document "'can fairly be said to have been

13

prepared or obtained because of the prospect of litigation," as opposed to being prepared "in the regular course of business.'" *Carver,* 94 F.R.D. at 134 (quoting 8 Wright & Miller, Federal Practice & Procedure: Civil § 2024 (1970)). As the court explained in *Carver,* claim files "straddle both ends of this definition, because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation." (*Id.*) Consequently, claim files generally do not constitute work product in the early stages of investigation, when the insurance company is primarily concerned with "'deciding whether to resist the claim, to reimburse the insured and seek subrogation . . . or to reimburse the insured and forget about the claim thereafter." (*Id.*)(quoting *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 373 (N.D. Ill. 1972)). Once litigation is imminent, however, the claims investigation file is maintained "in anticipation of litigation" and its contents are protected by the work product doctrine. (*Id.*) See also *Lett v. State Farm Fire and Cas. Co.,* 115 F.R.D. 501, 503 (N.D. Ga. 1987)(Forrester, J.)(finding that reports prepared after a claim was reassigned from a regular representative to a senior representative, due to the company's suspicion of fraud, were protected by the work product doctrine).

Plaintiff produced unredacted pages of the adjuster's diary through December 14, 1999, the date that plaintiff referred the claim

14

to its subrogation counsel. (Pl.'s Response to Defs.' Mot. to Compel [60] at 8.) Having referred the claim to counsel, litigation was imminent, or at least likely. Entries in the adjuster's diary made after this date were thus prepared "in anticipation of litigation" and constitute protected work product. *Accord Carver,* 94 F.R.D. at 134 and *Lett,* 115 F.R.D. at 503. As such, post-December 14, 1999 entries are only discoverable if defendant can show "substantial need." FED. R. CIV. P. 26(b)(3). Defendant has not even attempted to make the required showing and, in fact, appears to have already obtained by other means the most relevant factual material contained in the adjuster's diary. (*See* Defs.' Mot. for Summ. J. [56] at 18.) Accordingly, defendant's motion to compel production of an unredacted version of the adjuster's diary is **DENIED**, as is defendant's request for fees and costs associated with this part of its motion.

### CONCLUSION

For the foregoing reasons, the Court finds that defendant's Motion for Summary Judgment [56] should be **DENIED** and defendants' Motion to Compel [57] should be **GRANTED in part** and **DENIED in part**.

SO ORDERED, this _17_ day of September, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE